IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRACEY T. RIDOLFI, : | |
|     Plaintiff : | |
| : | |
| v. : | No. 1:15-cv-00859 |
| : | |
| : | (Judge Kane) |
| STATE FARM MUTUAL : | |
| AUTOMOBILE INSURANCE : | |
| COMPANY, : | |
|     Defendant : | |

## **MEMORANDUM**

Before the Court is Defendant State Farm Mutual Automobile Insurance Company ("State Farm")'s motion to dismiss Plaintiff's claims for bad faith, breach of duty of good faith and fair dealing, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and violation of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). (Doc. No. 8.)[1] Also before the Court is Plaintiff's motion to schedule oral argument on State Farm's 12(b)(6) motion to dismiss. (Doc. No. 13.) The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, and therefore, Pennsylvania law applies. For the reasons that follow, the Court will grant State Farm's motion to dismiss and deny Plaintiff's motion to schedule oral argument.

---

[1] While the title of State Farm's motion indicates that it purports to seek dismissal of Plaintiff's breach of duty of good faith and fair dealing claim, the substance of the motion does not address that claim, and neither does the memorandum of law supporting the motion or the proposed order attached to the motion. Accordingly, the Court will construe State Farm's motion as one seeking only dismissal of the bad faith, UTPCPL, and MVFRL claims in Plaintiff's complaint, excluding Plaintiff's contractual claim, which is not addressed by the instant motion.

1

**I.   BACKGROUND**[2]

On or about October 26, 2008, Plaintiff was involved in an automobile accident with Nancy Koller, now deceased, who failed to stop at a red traffic light and crashed into Plaintiff's car, causing her serious injuries. (Doc. No. 5 ¶ 5.) At the time of the accident, Plaintiff and her husband owned two automobiles, including the one she was driving, which were insured under a policy of automobile insurance issued by Defendant. (Id. ¶ 6.) The insurance policy on both vehicles was a "full tort" policy and included "stacking coverage," which provided for an increase in the amount of uninsured or underinsured coverage by the number of vehicles insured by Defendant. (Id. ¶ 8.)

Following the accident, Plaintiff filed claims with Nancy Koller's insurance company, Liberty Mutual, and her own insurer, Defendant, for the damage to her vehicle and for her medical coverage. (Id. ¶ 9.) On or about September 15, 2014, Plaintiff settled with Liberty Mutual for an undisclosed sum and continued to pursue a claim with Defendant for unpaid medical bills and ongoing treatment, pain and suffering. (Id. ¶ 11.)

Plaintiff alleges that on or about August 28, 2013, Plaintiff's attorney wrote to Defendant requesting the amount of her policy limits for both vehicles. (Id. ¶ 12.) Plaintiff alleges that on or about September 20, 2013, Defendant responded to Plaintiff's attorney in writing, stating that the policy limits for the automobile insurance policies in effect at the time of the accident for uninsured/underinsured motorist coverage were $50,000/$100,000. (Id. ¶ 13.) After receiving the letter from Defendant, Plaintiff alleges that Plaintiff's attorney obtained her legal file from

---

[2]The following background is taken from the allegations of Plaintiff's amended complaint. (Doc. No. 5.)

her lawsuit against Liberty Mutual. (Id. ¶ 14.) Upon receiving Plaintiff's legal file, Plaintiff's attorney found a document contained therein indicating that her uninsured/underinsured motorist policy limits were not $50,000/$100,000, as Defendant had reported in its September 20, 2013 letter, but were in fact $100,000/$300,000, respectively. (Id. ¶ 17.)

Plaintiff further alleges that throughout her litigation with Liberty Mutual, beginning in 2010, she has tried unsuccessfully to settle her claim with Defendant; however, she alleges that Defendant has "continuously and systematically prolonged its investigation in such a manner designed to delay and evade the settlement of Plaintiff's claim, including making ongoing requests for information from physicians who Plaintiff was never treated by and other inquiries which are irrelevant and duplicative." (Id. ¶ 18.)

On April 14, 2015, Plaintiff filed a civil action in the Court of Common Pleas of York County, Pennsylvania, arising out of Defendant's actions as described above. The complaint asserted claims of insurer bad faith, breach of the duty of good faith and fair dealing, breach of contract, violation of the UTPCPL, and violation of the MVFRL. On May 4, 2015, Defendant removed the action to this Court on the grounds that complete diversity existed between the parties. (Doc. No. 1.) On May 8, 2015, Defendant filed a motion to dismiss for failure to state a claim. (Doc. No. 4.) Rather than oppose Defendant's motion, Plaintiff instead filed an amended complaint on May 21, 2015, as permitted by Federal Rule of Civil Procedure 15. (Doc. No. 5.) On June 4, 2015, Defendant filed the instant motion to dismiss Plaintiff's claims of bad faith, violation of the UTPCPL, and violation of the MVFRL (Doc. No. 8), and a supporting memorandum of law. (Doc. No. 9.) As noted above, Plaintiff's contractual claim is not addressed in the present motion. The motion is now fully briefed and ripe for disposition.

## II. LEGAL STANDARD

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Generally, a court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion: (1) first, a court should separate the factual and legal conclusions of a claim, accepting well-pleaded factual matter and disregarding legal conclusions; (2) second, a court should determine whether the remaining well-pled facts sufficiently demonstrate that a plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (internal citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In conducting its analysis, a court must accept all well-pleaded factual allegations in the

complaint as true for purposes of determining whether the complaint states a plausible claim for relief, and must view the factual allegations in the light most favorable to the plaintiff. Philips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  In this regard, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 221 n. 3 (3d Cir. 2004).

The court's determination on a Rule 12(b)(6) review is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 302 (3d Cir. 2011) (internal citations omitted).  The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

### III.    DISCUSSION

As noted above, Defendant seeks dismissal of Plaintiff's claims of bad faith, violation of the UTPCPL, and violation of the MVFRL.

#### A.    Bad Faith

Plaintiff alleges that Defendant's actions constituted bad faith in violation of Pennsylvania's bad faith statute, 42 Pa.C.S.A. § 8371 et seq. (Doc. No. 5 ¶¶ 21-33.)  In its motion to dismiss, Defendant argues that Plaintiff's allegations of bad faith are conclusory and boilerplate assertions that fall short of the standard set by Twombly, and as such, should be dismissed for failure to state a claim for which relief can be granted.

Pennsylvania courts have defined bad faith as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.  For purposes of an

action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Morrison v. Mountain Laurel Assur. Co., 748 A.2d 689, 691 (Pa. Super. Ct. 2000) (citations omitted).  Therefore, a plaintiff must "show [1] that the defendant did not have a reasonable basis for denying benefits under the policy and [2] that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 505 (3d Cir. 2004) (quoting Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).

Courts have also recognized the potential existence of bad faith in situations where there has not been an outright refusal to pay benefits, such as a lack of investigation, failure to communicate with an insured, or delay.  See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n. 9 (3d Cir. 1999); Wiener v. Banner Life Ins. Co., No. 2-1351, 2003 U.S. Dist. LEXIS 4957, at *19-20 (E.D. Pa. Feb. 28, 2003).  In the case of an allegation of bad faith delay, a plaintiff must allege that a defendant had no reasonable basis for the delay in coverage, and that the defendant delayed coverage with knowing or reckless disregard for the unreasonableness of its action.  See Wiener, 2003 U.S. Dist. LEXIS 4957, at *20.

Plaintiff's allegations of bad faith stem from two sources: (1) her contention that Defendant "knowingly and fraudulently" sent her the September 20, 2013 letter incorrectly reporting her policy limits; and (2) her contention that Defendant has delayed its investigation

into her claim. (See Id. ¶¶ 13-20.)[3]  With regard to Plaintiff's first contention, the Court finds that Plaintiff has failed to allege facts that allow the Court to draw a reasonable inference that Defendant acted in bad faith under the standards articulated in Iqbal and Twombly.  While Plaintiff alleges that Defendant "knowingly and fraudulently" sent the September 20, 2013 letter reporting the incorrect policy limits, she offers no facts supporting that conclusion that would allow the Court to draw a reasonable inference that Defendant acted "knowingly and fraudulently" in doing so.  Plaintiff's allegation of a "knowing[] and fraudulent[ ]" misstatement of policy limits amounts to no more than a conclusory assertion that, because the information

---

[3]Plaintiff argues that Defendant's conduct violates Pennsylvania's Unfair Insurance Practices Act ("UIPA"), 40 P.S. § 1171.1 et seq., in several respects, which she details in her amended complaint, and that such violations are evidence of bad faith conduct. (Doc. No. 5 ¶¶ 23-31.)  The Court questions the relevance of alleged violations of the UIPA to a bad faith analysis, for the reasons discussed in Oehlmann v. Metropolitan Life Ins. Co., 644 F.Supp.2d 521 (M.D. Pa. 2007).  In that case, Judge Kosik adopted the logic of the Third Circuit expressed in Dinner v. United Services Auto. Ass'n Ins. Co., 29 F.App'x 823 (3d Cir. 2002), and stated the following:

> [we] reject that the alleged violations of UIPA and UCSP are bad faith per se for the following reasons.  First, the standard for judging legal bad faith in section 8371 actions is the Terletsky test.  Therefore, that an insurer may have allegedly violated a regulatory standard is irrelevant to our analysis.  Second, the UIPA and the UCSP are designed to be implemented and enforced by the Insurance Commissioner of Pennsylvania – it is not our province to usurp the Commissioner's power in this regard by de facto regulation of the insurance industry under the guise of section 8371.... The UIPA does not create a private cause of action for citizens.  The UIPA may only be enforced by the Commissioner, and such enforcement is wholly within the discretion of the Commissioner.  Finally, the UIPA attempts to prevent and regulate violations systemic in the insurance industry, as only violations committed "with a frequency that indicated a general business practice" are sanctionable.... Regulations designed for an industry are inapposite to evaluating an individual episode of alleged bad faith.

Oehlmann, 644 F.Supp.2d at 531 (citations and footnotes omitted).

sent by Defendant was inaccurate, the information must have been sent with some motive of self-interest or ill will. Such an allegation fails to meet Plaintiff's burden under <u>Iqbal</u> and <u>Twombly</u>. See <u>Atiyeh v. Nat'l Fire Ins. Co. of Hartford</u>, 742 F.Supp.2d 591, 599 (E.D. Pa. 2010) (where plaintiff alleged that defendant had "falsely and fraudulently represented that plaintiff had not performed routine maintenance of the premises," among other similar allegations, the court held that those allegations were merely conclusory legal statements, not factual averments supporting a bad faith claim).

With regard to Plaintiff's second contention supporting her bad faith claim, that Defendant delayed its investigation into her claim, the Court similarly agrees with Defendant that Plaintiff has failed to allege facts allowing the Court to draw a reasonable inference that Defendant acted in bad faith under the <u>Twombly</u> standard. As noted above, Plaintiff alleges that throughout her litigation with the tortfeasor's insurer, Liberty Mutual, beginning in 2010, she tried unsuccessfully to settle her claim with Defendant, but Defendant "has continuously and systematically prolonged its investigation in such a manner designed to delay and evade the settlement of Plaintiff's claim, including making ongoing requests for information from physicians who Plaintiff was never treated by and other inquiries which are irrelevant and duplicative." (Doc. No. 5. ¶ 18.) Plaintiff's allegations do not identify how Defendant's requests for information were irrelevant and duplicative or designed to delay settlement of her claim; rather, they amount to nothing more than conclusory assertions of delay. At most, Plaintiff alleges that Defendant made requests for information "from physicians who Plaintiff was never treated by." (<u>Id.</u>) However, without additional factual support, that allegation does not permit a reasonable inference that any such erroneous requests were made by Defendant with

8

some motive of self-interest or ill will. See Yohn, No. 13-024, 2013 WL 2470963, at *5-6 (M.D. Pa. June 7, 2013) (allegations of unreasonable delay and failure to respond to inquiries and correspondence in a timely manner, without additional factual support, are merely conclusory allegations "that the courts have held are not entitled to be assumed to be true and which fail to state a claim upon which relief can be granted").

As further support for Plaintiff's contention that Defendant has delayed settlement of her claim in bad faith, Plaintiff takes issue with Defendant's request to depose her in May 2013 in connection with her claim for UIM benefits. (Doc. No. 5 ¶ 20.) While Plaintiff alleges that Defendant wanted to "again" depose her at that time, she also alleges in the preceding paragraph of her amended complaint that she was previously deposed by Liberty Mutual's attorney, not Defendant's. (Id. ¶ 19.) In accordance with the policy of insurance under which Plaintiff seeks benefits,[4] Plaintiff is required to submit to an examination under oath. (Doc. No. 11, Exhibit E at 37-38.) Plaintiff has failed to allege any facts supporting a reasonable inference that Defendant's request for a statement under oath, which is permitted by Plaintiff's insurance policy, constitutes bad faith. Accordingly, Plaintiff's claim of bad faith will be dismissed without prejudice and with leave to amend.

### B. UTPCPL

Plaintiff's amended complaint also alleges that Defendant's September 20, 2013 letter,

---

[4]As stated above, in considering a motion to dismiss, a court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 221 n. 3 (3d Cir. 2004). The insurance policy under which Plaintiff seeks coverage is a document forming the basis of Plaintiff's claim, and therefore, the Court can consider the contents of it in connection with this motion to dismiss.

which incorrectly stated her policy limits, constituted a "false or misleading statement[]of fact" amounting to an "unfair or deceptive act[]" in violation of Section 201 of the UTPCPL, 73 P.S. § 201-1 et seq. (Doc. No. 5 ¶¶ 43-44.)  In its motion to dismiss, Defendant argues that Plaintiff's claim under the UTPCPL is barred by the economic loss doctrine, and moreover, that Plaintiff has failed to properly plead a claim under the UTPCPL.  Because the Court finds that Plaintiff's UTPCPL claim is barred by the economic loss doctrine, the Court need not address Defendant's second argument.

Under Pennsylvania law, the economic loss doctrine "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)).  It is "designed to ... establish clear boundaries between tort and contract law." Id. at 680.  Accordingly, where a "plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's redress comes from the law of contract, not the law of tort." Martin v. Ford Motor Co., 765 F.Supp.2d 673, 684 (E.D. Pa. 2011) (citation omitted).

The issue of whether the economic loss doctrine applies to statutory claims under the UTPCPL has been the subject of much dispute in Pennsylvania.  The Pennsylvania Supreme Court has not yet ruled on whether the economic loss doctrine bars intentional fraud and deceptive practices claims stemming from a statute such as the UTPCPL.  However, the Third Circuit has predicted that the Pennsylvania Supreme Court would hold that UTPCPL claims are barred by the economic loss doctrine. Werwinski, 286 F.3d at 681.

The Werwinski decision, however, has generated considerable criticism. See, e.g.,

O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 275 (E.D. Pa. 2003) (engaging in a critique of Werwinski and declining to adopt the Third Circuit's reasoning).  In Knight v. Springfield Hyundai, 81 A.3d 940 (Pa. Super. Ct. 2013), the Pennsylvania Superior Court held that UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence.  Id. at 951-52.  Courts that have addressed the issue after Knight have split.  Some courts have held that Werwinski is no longer controlling authority and have followed Knight in ruling the doctrine inapplicable to claims brought under the UTPCPL.  Roberts v. NVR, Inc., No. 15-489, 2015 WL 3745178, at *5 (W.D. Pa. June 15, 2015); Horne v. Progressive Advanced Ins. Co., No. 15-1029, 2015 WL 1875970, at *1 n. 1 (E.D. Pa. April 24, 2015); Kantor v. Hiko Energy, LLC, No. 14-5585, 2015 WL 1650049, at *3 (E.D. Pa. April 14, 2015).

Other courts have held that the Werwinski prediction of the Pennsylvania Supreme Court's ruling on the economic loss doctrine remains binding on the district courts in this circuit until either the Pennsylvania Supreme Court or the Third Circuit rules otherwise.  McGuckin v. Allstate Fire and Cas. Ins. Co., No. 15-2173, 2015 WL 4579028, at *3 (E.D. Pa. July 30, 2015); Vaughan v. State Farm Fire & Cas. Co., No. 14-1684, 2014 WL 6865896, at *4 & n. 6 (E.D. Pa. Dec. 3, 2014); Pesotine v. Liberty Mut. Group, Inc., No. 14-784, 2014 WL 4215535, at *4 n. 1 (M.D. Pa. Aug. 25, 2014); see also Moore v. State Farm Fire & Cas. Co., No. 14-3113, 2015 WL 463943, at *2 (E.D. Pa. Feb. 4, 2015) (applying Werwinski after Knight); Zeglen v. Nw. Mut. Life Ins. Co., No. 14-173, 2014 WL 4215531, at *4 (M.D. Pa. Aug. 25, 2014) (same).

This Court concludes that it is bound by a Third Circuit prediction of how the Pennsylvania Supreme Court will rule on an issue, unless one of those two courts subsequently

rules otherwise. McGuckin, 2015 WL 4579028, at *3; Tubman v. USAA Cas. Ins. Co., 943 F.Supp.2d 525, 531 (E.D. Pa. 2013); see also Cohen v. Am. Int'l Ins. Co., No. 9505243, 1996 WL 103793, at *3 (E.D. Pa. Mar. 7, 1996) ("The Third Circuit's prediction of how Pennsylvania's highest court will rule carries authority independent of intermediate state court[] decisions. In fact, the Third Circuit need not follow these decisions."). Accordingly, Werwinski governs this Court's decision here.

The Werwinski court concluded that the economic loss doctrine bars UTPCPL claims of intentional fraud for solely economic losses, except in situations where the fraud occurs outside of the contract. Werwinski, 286 F.3d at 678. Accordingly, a UTPCPL claim is barred where allegedly deceptive conduct is clearly "interwoven" with an insurance contract and a plaintiff seeks damages that flow from the contract. See McGuckin, 2015 WL 4519028, at *4 (where alleged misrepresentation relates to the subject matter of the insurance contract, economic loss doctrine bars UTPCPL claim); Zeglen, 2014 WL 4215531, at *4 (where there is no allegation of damages aside from those arising from the agreement of insurance, UTPCPL claim is clearly interwoven with plaintiff's insurance contract, and therefore is barred); Tubman, 943 F.Supp.2d at 530 (plaintiff's claimed breach of insurance contract by engaging in unfair or deceptive acts stemmed from a failure to pay UIM benefits, and therefore, the alleged deceptive practices were "critically related" to the alleged breach); Sicherman v. Nationwide Life Ins. Co., No. 11-7227, 2012 WL 1122737 at *4 (E.D. Pa. Apr. 4, 2012) (dismissing a UTPCPL claim where a woman's claim that an insurance company deceived her late husband into letting his life insurance policy lapse was critically related to the alleged breach).

Here, Plaintiff's UTPCPL claim is clearly interwoven with her insurance contract. She

alleges that the Defendant's letter to her incorrectly stating her policy limits was a "misleading statement" amounting an "unfair or deceptive act" in violation of the UTPCPL. (Doc. No. 5 ¶¶ 42-50.) That communication from her insurance company was related to, and indeed was centered on, the substance of the contract of insurance Plaintiff maintained with Defendant. As such, her claim based on that communication is clearly "interwoven" with her insurance contract, and, therefore, is barred by the economic loss doctrine under Werwinski. See McGuckin, 2015 WL 4519028, at *4; Zeglen, 2014 WL 4215531, at *4; Tubman, 943 F.Supp.2d at 530; Sicherman, 2012 WL 1122737 at *4. Accordingly, the Court will dismiss Plaintiff's claim for violation of the UTPCPL with prejudice.

### C.    MVFRL

Finally, Plaintiff's amended complaint attempts to state a cause of action pursuant to the Pennsylvania MVFRL, 75 Pa.C.S.A. § 1701 et seq., based upon the allegation that Defendant "acted in an unreasonable manner in refusing to pay benefits due Plaintiff and in [refusing] to pay for past or future medical treatment." (Doc. No. 5 ¶ 56.) In its motion to dismiss, Defendant argues that this claim constitutes nothing more than a conclusory allegation lacking factual support.

Plaintiff's amended complaint quotes several provisions of the MVFRL in paragraphs 53 through 56. In paragraph 53, Plaintiff quotes Section 1716, which provides that "[o]verdue benefits shall bear interest at the rate of 12% per annum from the date the benefits became due." (Id. ¶ 53.) In paragraph 54, Plaintiff further quotes Section 1716 by stating "[i]n the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon (12%),

reasonable attorney fees based upon actual time expended." (Id. ¶ 54.) In paragraph 55, Plaintiff's amended complaint references Section 1797 of the MVFRL, which provides that ". . . an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a Peer Review Organization." (Id. ¶ 55.) After quoting the above three provisions, Plaintiff's amended complaint then alleges that "Defendant has acted in an unreasonable manner in refusing to pay benefits due Plaintiff and in their refusal to pay for past or future medical treatment." (Id. ¶ 56.)

The Court must agree with Defendant that Plaintiff's MVFRL claim constitutes nothing more than a conclusory allegation lacking in factual support. Plaintiff's amended complaint does not adequately identify how or why Defendant's handling of Plaintiff's UIM claim gives rise to a claim under Sections 1716 and 1797 of the MVFRL. Plaintiff must do more than quote sections of the MVFRL and then make a conclusory statement that Defendant "acted in an unreasonable manner in refusing to pay benefits due Plaintiff" to establish a plausible entitlement to relief under the MVFRL. Accordingly, Plaintiff's claim pursuant to the MVFRL will be dismissed without prejudice and with leave to amend.

## IV.   CONCLUSION

Therefore, for all of the reasons discussed above, the Court will grant Defendant's motion to dismiss. Plaintiff's claim of bad faith is dismissed without prejudice; Plaintiff's claim for violation of the UTPCPL is dismissed with prejudice; and Plaintiff's claim for violation of the MVFRL is dismissed without prejudice. An order consistent with this memorandum follows.