## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRACEY RIDOLFI,** | : | **Civil No. 1:15-CV-859** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **STATE FARM MUTUAL** | : | |
| **AUTOMOBILE INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

This is an insurance dispute between Tracey Ridolfi and her insurer, State

Farm Mutual Automobile Insurance Company, relating to claims concerning State

Farm's alleged refusal to provide underinsured motorist (UIM) coverage to Ridolfi.

Currently Ridolfi's second amended complaint, (Doc. 21), the operative pleading in

this action, brings two claims against State Farm:  First, Ridolfi alleges that State

Farm's conduct constitutes a breach of this insurance contract.   In addition, Ridolfi

contends that State Farm violated Pennsylvania's bad faith statute, 42 Pa. Cons. Stat.

Ann. § 8371, by:  (1) misstating the scope of its coverage; (2) insisting upon a

sworn statement from its insured; (3) unreasonably delaying its investigation of this

claim and requiring the production of multiple sets of medical records; and (4)

1

failing to keep Ridolfi fully informed in writing on the progress of her claim.

Ridolfi's bad-faith claim is now being challenged by State Farm's pending motion for partial summary judgment. (Doc. 41) In support of this motion State Farm argues that it promptly began adjusting this UIM claim upon receipt of the claim in September of 2013. State Farm also argues that any initial misstatement of the policy limits for this claim was a product of an innocent mistake, a mistake compounded by the fact that the amount of UIM insurance coverage requested and paid for by the Ridolfis was significantly lower than the actual coverage reflected on the policy issued by State Farm. State Farm also notes that it promptly corrected this error in a fashion that avoided any potential prejudice to Ridolfi. As for State Farm's requests for a sworn statement from Ridolfi and medical records, State Farm contends that these requests were permitted by the policy, and these requests for medical records were required due to discrepancies in the records produced by the plaintiff. Furthermore, State Farm also observes that Ridolfi resolved her underlying claim against the original tortfeasor for less than the tortfeasor policy limits, yet another factor which cautioned in favor of careful review of this specific UIM claim.

Upon consideration of the parties' briefs and the evidence submitted by the parties, the Court finds insufficient evidence to support Ridolfi's bad-faith claim,

and concludes that State Farm is entitled to summary judgment on this claim. Therefore, for the reasons set forth below, the motion for partial summary judgment will be granted.

## II.      Statement of Facts and of the Case[1]

The chain of events which led to this lawsuit began on October 26, 2008 when Tracey Ridolfi was involved in an automobile accident with a tortfeasor who was insured by Liberty Mutual Insurance Company. Following this collision, Ridolfi filed a claim with the tortfeasor's insurance carrier, Liberty Mutual, and notified her own insurance carrier, State Farm, of this accident. Following notification of this accident, Ridolfi's counsel exchanged correspondence with State Farm seeking information regarding medical bills paid out by State Farm on Ridolfi's behalf in January of 2009, but there is no record of Ridolfi making any specific demand upon State Farm for payment of UIM benefits prior to August 2013.

Instead, the initial focus of Ridolfi's efforts to obtain compensation for her injuries appears to have been with the tortfeasor and the tortfeasor's insurance carrier, Liberty Mutual. As part of this effort, on October 20, 2010, Ridolfi filed a lawsuit against the original tortfeasor, alleging that she was injured as a result of the

---

1 This statement of facts is taken from the competing submissions of the parties, to the extent that these submissions are corroborated by undisputed evidence.

tortfeasor's negligence. After nearly four years of litigation, on September 15, 2014 Ridolfi settled this claim against Liberty Mutual, compromising the claim in return for the payment of $85,000, a sum which was less than the full amount of the tortfeasor's policy limits with Liberty Mutual, $100,000. State Farm consented in this settlement and waived any subrogation rights it might have as part of the settlement of this lawsuit.

The first clear notice State Farm received of Ridolfi's intent to also bring a UIM coverage claim against her own insurer came on August 28, 2013, when Ridolfi's counsel wrote to State Farm. In this August 28, 2013, correspondence Ridolfi's counsel "put [State Farm] on notice that this case may involve a UM/UIM potential claim." In this August 2013 correspondence, Ridolfi's counsel also sought policy limits and coverage information from State Farm. Three weeks later, later on September 20, 2013, State Farm's claims adjuster responded to this notice by providing Ridolfi's attorney a letter which, stated that the UIM coverage under Ridolfi's policy was $50,000/$100,000 with stacking coverage. In this September 20 letter State Farm also invited Ridolfi's counsel to advise the insurer if he disagreed with this policy limits report. In fact, this policy limits description was erroneous but the error was, in part, a product of confusion which stemmed from inconsistencies between the coverage sought by the Ridolfis, and the coverage

actually conferred upon them by States Farm.   The coverage limits described in State Farm's September 20, 2013, letter accurately described the policy limits requested in the Ridolfis' 2004 insurance application.   However, in fact, the policy issued to the plaintiff and her spouse conferred UIM coverage to them beyond the coverage which they requested.   The actual amount of this coverage was $100,000 per person and $300,000 per accident.

On November 5, 2013, Ridolfi's attorney notified State Farm of this discrepancy in a letter which conveyed a $700,000 demand upon State Farm, and threatened the filing of a statutory bad faith claim against this insurance company.[2] Having received this November 5, 2013, correspondence, State Farm promptly responded, declining Ridolfi's $700,000 settlement demand but reforming and clarifying the scope of its coverage and confirming UIM policy coverage of $100,000 per person and $300,000 per accident on each of two vehicles.[3]

---

[2] In April of 2014 Ridolfi subsequently amended this settlement demand to a demand for the full amount of State Farm's UIM coverage, $200,000.   This amended settlement demand, however, was cast in terms which were simply not conducive to further discussion, since Ridolfi's counsel informed State Farm that this policy limits demand was non-negotiable.   Ridolfi's lawyer's letter then gave State Farm 15 days in which to surrender its policy limits or face bad faith claims.

[3] Ridolfi's second amended complaint also originally alleged on-going bad faith by State Farm in the misrepresentation of these policy limits, claiming that State Farm, through its counsel, later repeated the false assertion that the policy limits were $50,000/$100,000 in May 2014 correspondence to the plaintiff's attorney.   Ridolfi

As the parties strived to clarify these policy limitations, they also began exchanging requests for information regarding the nature and extent of Ridolfi's medical care and treatment. State Farm's efforts to fully document Ridolfi's injuries and medical expenses were both understandable and prudent given the various demands which had been tendered to this insurer by counsel, demands which initially sought $700,000 and then later included what was described as a non-negotiable demand for State Farm's UIM insurance policy limits. These efforts to secure medical records were marked by some delays and confusion; however, those delays and confusion were not attributable exclusively to State Farm. Rather, they reflected a confluence of events, including some misunderstanding and mistakes on the plaintiff's part. Initially, on November 5, 2013, plaintiff's counsel reported that he was sending all of Ridolfi's medical records to State Farm. After State Farm was unable to confirm receipt of these records, the claims adjuster wrote to counsel requesting documentation of Ridolfi's medical specials on November 22, 2013.

---

apparently is no longer pursuing this particular claim of bad faith, which is demonstrably incorrect and apparently rests upon a misreading of this May 2014 letter, which described the insurance coverage that the original tortfeasor had originally had through Liberty Mutual, and did not purport to describe State Farm's UIM policy limits. Since this assertion of bad faith by the plaintiff had no basis in fact and has been abandoned by the plaintiff, we will not discuss this discredited allegation further.

When these medical records were not forthcoming, State Farm's claims adjuster followed up on January 3, 2014, once again requesting these medical records. The claims adjuster then reached out to Ridolfi's counsel on January 7, 2014 and explained that State Farm had only received a single April 2012 medical report relating to the plaintiff. At this juncture, Ridolfi's counsel forwarded, and State Farm, received medical records from fifteen health care providers.

These records, however, were incomplete in several particulars. First, the medical files did not include any records detailing Ridolfi's physical condition prior to the October 2008 accident. Second, the temporal scope of the records was limited in another respect in that the disclosed records did not include any treatment records relating to medical care received by Ridolfi after March of 2012. Finally, the medical records did not include any records pertaining to prior accidents involving Ridolfi. This oversight was understandable, since Ridolfi's counsel had previously been unaware of any prior accidents.

Throughout March and April of 2014 State Farm and Ridolfi's counsel continued to exchange correspondence regarding State Farm's request for medical records. While the parties communicated with one another it is apparent that they did not fully understand one another. State Farm avers that it was seeking to obtain specific additional and supplemental material, and its correspondence seeks medical

records, but does not identify specifically what further records were being sought. Ridolfi's counsel, in turn, simply repeated that he has provided the medical records, without appreciating that State Farm was seeking documents beyond those produced in January of 2014.

The need for further medical records became more apparent as this matter progressed. In April 2014 State Farm retained counsel to assist in the resolution of this claim. As part of this claims resolution effort, counsel scheduled a sworn statement under oath from Ridolfi on June 19, 2014. While Ridolfi alleges that this act by State Farm evidenced its bad faith, the scheduling of this statement under oath was a procedure that was specifically authorized under Ridolfi's policy with State Farm, and was an appropriate measure given the scope of her insurance claim demands made here.[4] In the course of the statement under oath, Ridolfi testified to

---

[4] Ridolfi also suggests that taking this sworn statement was improper because State Farm had been invited in February of 2012 to attend a deposition of the plaintiff conducted in connection with her lawsuit against the original tortfeasor. While State Farm denies that it was invited to this deposition, even if it had been invited to attend this deposition in a case in which it was not a party, for the reasons discussed below, we conclude that the failure to attend this deposition does not evidence bad faith. First, given State Farm's status as a non-party, it is doubtful that this company could have participated in the deposition in any meaningful fashion. Second, the deposition took place some 16 months prior to the first notice by Ridolfi that she intended to bring a UIM claim against State Farm. This insurers' lack of prescience and inability to predict the future does not equate to bad faith. Third, even if State Farm had attended this deposition in February of 2012, by 2014 it would still have been justified in requiring a statement under oath from Ridolfi, who

matters which renewed State Farm's interest in obtaining further medical records. Specifically, Ridolfi testified that she had received medical treatment after March of 2012, the last date upon which plaintiff's counsel had produced medical records. In addition, Ridolfi acknowledged that she had suffered injuries from a prior motor vehicle accident.

Given these disclosures by Ridolfi, State Farm pursued additional efforts to secure further medical records, including several attempts to subpoena these records. These efforts were marked by some missteps and miscommunication between the parties, but ultimately resulted in the receipt of some additional, previously undisclosed medical records, information that was relevant to State Farm's evaluation of Ridolfi's $700,000 claim and settlement demand.

State Farm also sought employment records from Ridolfi as part of its evaluation of this claim. While Ridolfi has alleged that these requests were irrelevant to her UIM claim, it appears that plaintiff's counsel had suggested on several occasions that Ridolfi's future employability was uncertain, and had indicated that Ridolfi might be making a claim for loss of future earnings, assertions which made an assessment of Ridolfi's employment history relevant to any claims evaluation.

was demanding a policy limits payment from her insurer, in order to document the scope and extent of her injuries and treatment since 2012.

As the parties engaged in these efforts, Ridolfi continued to litigate a claim against the tortfeasor's insurance carrier, Liberty Mutual. That underlying claim was not resolved until September 15, 2014, when Ridolfi settled this claim against Liberty Mutual, compromising the claim in return for the payment of $85,000, a sum which was less than the full amount of the tortfeasor's policy limits with Liberty Mutual, $100,000.

It is against this factual background that Ridolfi brought this statutory bad faith claim in state court in April of 2015 pursuant to 42 Pa. Cons. Stat. Ann. § 8371, alleging that State Farm engaged in bad faith by, *inter alia*, (1) misstating the scope of its coverage; (2) insisting upon a sworn statement from its insured; (3) unreasonably delaying its investigation of this claim and requiring the production of multiple sets of medical records; and (4) failing to keep Ridolfi fully informed in writing on the progress of her claim.

State Farm removed this case to federal court, (Doc. 1),[5] and at the close of

_____

5 Once Ridolfi sued State Farm, State Farm attempted to secure medical records by subpoena from various third party care givers. There were some false starts in this effort. Subpoenas were sought in state court even through this matter had been removed to federal court, and the initial federal court subpoenas that were later issued did not fully comply with Rule 45. While these discovery missteps occurred, they were promptly corrected by State Farm when it was notified by plaintiff's counsel of his objections. Therefore, we do not equate these actions with bad faith. On this score, we note that we follow a path travelled by many other courts which have rebuffed: "attempts to prop up [an] insurance-based bad faith

discovery has filed a motion for partial summary judgment, which seeks summary judgment on this statutory bad faith claim. (Doc. 41.) This motion is fully briefed by the parties and is, therefore, ripe for resolution.

For the reasons set forth below, this motion will be granted, and Ridolfi's bad faith claim will be dismissed.

## III.   Discussion

### A.        Summary Judgment Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).  For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.   *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408,

---

claim under 42 Pa. Cons.Stat. § 8371 by claiming that [the insurer] engaged in bad faith during the discovery stage of the instant litigation.   However, Pennsylvania courts have held that § 8371 'clearly does not contemplate actions for bad faith based upon allegation of discovery violations.' *O'Donnell ex rel. Mitro v. Allstate Ins. Co.,* 734 A.2d 901, 908 (Pa.Super.Ct.1999)."   *Duda v. Standard Ins. Co.,* 649 F. App'x 230, 237 (3d Cir. 2016)

412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *Anderson*, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *see also* Fed. R. Civ. P. 56 (c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple*

*BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252; *see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

<u>*Id.*</u> In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

**B.     Plaintiff's Bad-Faith Claim Fails on its Merits**

In this case, Ridolfi argues that State Farm's processing of her UIM claim was so unreasonable that it violated Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371.   In support of this assertion of bad faith, Ridolfi points to State Farms' misstatement of its coverage limits, alleged delay in claims processing, insistence upon a sworn statement under oath from Ridolfi, persistence in collecting medical records and failure to comply with insurances regulations regarding periodic status notices to insureds as evidence of bad faith.   We find, however, that, while both parties indulged in occasional missteps in the process of reviewing and litigating this claim, the essentially uncontested evidence does not meet the demanding, precise and exacting legal standards prescribed under Pennsylvania law for a bad faith insurance processing claim.

Under Pennsylvania law, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the court can award the claimant interest, punitive damages, court costs and attorney fees.   42 Pa. Cons. Stat. Ann. § 8371.   The Third Circuit has explained "bad faith" in this context as follows:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.   For purposes of an action against an insurer for failure to pay a claim,

> such conduct imports a dishonest purpose and means a
> breach of a known duty (*i.e.,* good faith and fair dealing),
> through some motive of self-interest or ill will; mere
> negligence or bad judgment is not bad faith.

*Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Although an insurer's conduct need not be fraudulent to rise to the level of bad faith, "mere negligence or bad judgment is not bad faith." *Id.* (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. 2004). Rather, under Pennsylvania law, "[b]ad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured. *See Coyne v. Allstate Ins. Co.*, 771 F.Supp. 673, 678 (E.D.Pa.1991) (bad faith is failure to acknowledge or act promptly on the claims, or refusing to pay without reasonable investigation of all available information); *Romano v. Nationwide Mut. Fire Ins. Co.*, 435 Pa.Super. 545, 646 A.2d 1228 (1994)." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 (3d Cir. 1999). "Ultimately, in order to recover on a bad faith claim, the insured must prove: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan,* 430 F.3d 121, 137 (3d Cir. 2005). Further, "[t]o recover for bad faith, 'a plaintiff must show *by clear and convincing evidence* that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or

recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 522 (3d Cir. 2012) (quoting *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)) (emphasis added). "[T]his heightened standard requires the insured to provide evidence 'so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.' *Bostick v. ITT Hartford Grp.*, 56 F.Supp.2d 580, 587 (E.D.Pa.1999) (citations omitted)." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011).

The defendant can defeat a plaintiff's bad faith claim by demonstrating that it had a reasonable basis to deny the claim. *Id.* at 523. Furthermore, "[a]t the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.' " *Babayan*, 430 F.3d at 137 (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Verdetto v. State Farm Fire and Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) ("[I]n order to defeat a motion for summary judgment, a plaintiff must show that a jury could find by 'the stringent level of clear and convincing evidence' that the insurer lacked a reasonable basis for its handling of the claim and

16

that it recklessly disregarded its unreasonableness."), *aff'd* 510 F. App'x 209 (3d Cir. 2013); *McCabe v. State Farm Mut. Auto. Ins. Co.*, 36 F. Supp. 2d 666, 669 (E.D. Pa. 1999).

It is also well-established that it is not bad faith for an insurance company to "conduct a thorough investigation into a questionable claim." *Babayan*, 430 F.3d at 138. Accordingly, courts applying Pennsylvania law have found that an insurer satisfies its burden by "showing 'a reasonable basis' for investigating a claim, and is thus entitled to judgment as a matter of law, where it demonstrates the existence of certain 'red flags' which prompted it to further investigate an insured's claim." *Verdetto*, 837 F. Supp. 2d at 484 (quoting *Brown v. Liberty Mut. Ins. Group*, 2001 U.S. Dist. LEXIS 781, *8-11, 2001 WL 87741, *3-4 (E.D. Pa. Jan. 30, 2001)). Thus, the mere passage of time does not define bad faith. Rather, an inference of bad faith only arises when time passes as part of a pattern of knowing or reckless delay in processing a meritorious insurance claim. In short:

> Delay is a relevant factor in determining whether bad faith has occurred, but a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith. Rather, courts have looked to the degree to which a defendant insurer *knew* that it had no basis to deny the claimant; if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred. *See, e.g., Klinger,* 115 F.3d at 234 (suggesting that delay is relevant consideration in bad faith claim when insurer knew that liability was clear and

there was no basis to deny claim); *Quaciari,* 998 F.Supp. at 582–83 (granting summary judgment for insurer in part because periods of delay were "equally attributable" to plaintiff and defendant; holding also that "even if all delay were attributable to Allstate, it would not, without more, be sufficient to establish bad faith"); *Grove v. Aetna Cas. & Sur. Co.,* 855 F.Supp. 113, 115 (W.D.Pa.1993) (stating that although multiple requests for information may constitute bad faith, delay is not necessarily equivalent to rejection of claims.

*Kosierowski v. Allstate Ins. Co.,* 51 F. Supp. 2d 583, 588–89 (E.D. Pa. 1999), *aff'd,* 234 F.3d 1265 (3d Cir. 2000).

Judged by these legal guideposts, we find that Ridolfi has not shown on these essentially undisputed facts "conduct [by State Farm which] imports a dishonest purpose and . . . a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Therefore, mindful of the fact that "in order to defeat a motion for summary judgment, a plaintiff must show that a jury could find by 'the stringent level of clear and convincing evidence' that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness, *"Verdetto v. State Farm Fire and Cas. Co*., 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011)), *aff'd* 510 F. App'x 209 (3d Cir. 2013), we find that this legal threshold has not been met and will grant State Farm's motion for summary judgment on this claim.

In assessing the reasonableness of State Farm's response in this case, we observe that certain essential facts are undisputed. This case involves an under-insured motorist policy claim against State Farm. Thus, the liability of State Farm was contingent upon a determination of the liability of the original tortfeasor, and an assessment of whether the policy limits on the original tortfeasor's insurance policy rendered that tortfeasor under-insured. Given these contingencies, a determination of whether a valid under-insured motorist claim exists often must await factual and legal developments in the underlying claim against the original tortfeasor. This process necessarily can create some delay in claims adjustment, delays that are not evidence of bad faith but simply reflect the process of careful claims evaluation.

So it is in this case. Ridolfi was injured in October of 2008 in an accident with the original tortfeasor, who was insured by Liberty Mutual. While Ridolfi initially placed both the tortfeasor and her own insurer on notice of this accident by 2009, Ridolfi's initial efforts were justifiably focused on her claim against the original tortfeasor and that tortfeasor's insurance carrier. Those efforts were pursued in earnest in 2010, when Ridolfi filed her lawsuit against the tortfeasor in state court and these state court proceedings were protracted. Indeed, it is undisputed that Ridolfi did not resolve this underlying claim, which serves as the

legal and factual predicate for her UIM claim, until September of 2014. Furthermore, when Ridolfi ultimately resolved this claim with the insurer of this allegedly under-insured tortfeasor she did so for a sum that was below that tortfeasor's policy limits. While this tactical litigation choice may well have been justified, the settlement of the underlying claim against what one alleges to be an under-insured motorist for less than the policy limits certainly raises questions concerning the extent to which Ridolfi's own insurer has an obligation to make further payments to her under its under-insured motorist insurance coverage. Indeed, oftentimes it is both prudent and reasonable for a UIM insurer to await some determination of liability and damages in the underlying tortfeasor case before trying to make an informed assessment of any UIM claim. *See Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2016 WL 6962620, at *6 (M.D. Pa. Nov. 29, 2016) ("it was reasonable for [the insurer] to await a determination regarding whether [the insured's] injuries exceeded the . . . primary insurance coverage thresholds under the [primary] policy, before resolving its UIM claim.")

These considerations inform our analysis of Ridolfi's bad faith-delay argument in this case. In her response to this summary judgment motion, Ridolfi invites us to find that the delay which occurred in processing this claim should be measured from 2009, the date upon which State Farm was on notice of the accident

involving Ridolfi and the tortfeasor. But this argument ignores the fact that, at that time, no UIM claim had been made against State Farm, no tort case had been filed in state court against the original tortfeasor, and no determination had been made of that tortfeasor's liability, the scope of Ridolfi's injuries or the adequacy of the original tortfeasor's insurance coverage. All of these essentially undisputed factors caution against beginning the time clock for bad faith purposes at this early date.

Rather, we believe that August 28, 2013, is the earliest date which may serve as the starting date for assessing the reasonableness of any claims processing delay in this case. That date is the date upon which Ridolfi's counsel placed State Farm on notice of a potential UIM claim, and the very language used by counsel to notify State Farm of this potential claim underscores why it would be inappropriate to measure alleged delay from any earlier date. In this August 28, 2013, correspondence Ridolfi's counsel simply stated that Ridolfi was "put[ting] [State Farm] on notice that this case *may* involve a *UM/UIM potential* claim." (emphasis added.) Thus, even in August of 2013, Ridolfi's notice to State Farm was contingent and equivocal, since it simply indicated that a potential UIM claim may exist. Given Ridolfi's own guarded characterization of this claim in August of 2013, it cannot be said that Ridolfi can show by clear and convincing evidence that State Farm should have recognized this UIM claim four years earlier in 2009.

Indeed, this court has in the past held that the date upon which a plaintiff clearly notifies an insurance carrier of a potential UIM claim serves as the most appropriate benchmark for measuring delay in evaluating that claim, notwithstanding prior communications between the parties. *Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 1:13-CV-01837, 2014 WL 5325340, at *7 (M.D. Pa. Oct. 20, 2014), *aff'd*, 643 F. App'x 201 (3d Cir. 2016).

Once this claim was made by Ridolfi's counsel, the parties engaged in an on-going process aimed at attempting to resolve this claim. These efforts were unsuccessful but that lack of success, standing alone, does not demonstrate clear and convincing evidence of bad faith. Quite the contrary, even when we construe the evidence in a light most favorable to the plaintiff, we find that this claims processing chronology reflects a confluence of events and actions, and that in some instances the plaintiff's own actions may have contributed to some of these delays. In reaching this conclusion, we are constrained to assess this legal issue in the undisputed factual context of this case, where once State Farm was placed on notice of Ridolfi's potential claim it received two settlement demands, one in November of 2013 for $700,000, and a second non-negotiable demand in April of 2014 for the full UIM policy limits, $200,000. Given the dimensions of these demands, prudence dictated a careful review of this claim, and it appears that State Farm undertook such

a review.

In the course of this review, State Farm promptly, but erroneously, initially identified the UIM policy limits as $50,000/$100,000 in September of 2013. While Ridolfi cites this error as evidence of bad faith on State Farm's part, we note that the undisputed evidence provided some basis for this original, and erroneous, report since the Ridolfis' insurance application actually sought this lower level of coverage, but State Farm underwrote a policy which gave the plaintiff more UIM coverage than she had requested. Moreover, when this discrepancy was identified by plaintiff's counsel, State Farm promptly reformed its policy coverage position in November of 2013, to accurately state greater policy limits of $100,000/$300,000. Thus, the policy limits were revised and corrected long by State Farm before Ridolfi made her policy limits demand upon State Farm and these policies limits were correctly understood by all parties some ten months prior to the settlement of the underlying claim against the original tortfeasor. On these facts, the brief delay and confusion regarding policy limits simply cannot be seen as part and parcel of some bad faith self-dealing by State Farm.

Nor do we find that State Farm's insistence upon obtaining a statement under oath from Ridolfi in June of 2014 was evidence of bad faith. On this score, it is entirely undisputed that State Farm has the right to insist upon such a statement from

Ridolfi under its contract of insurance with the plaintiff. Indeed, securing such statements is not uncommon in these cases, and is typically not regarded as evidence of bad faith. *See Shaffer v. State Farm Mut. Auto. Ins. Co*., No. 1:13-CV-01837, 2014 WL 5325340 (M.D. Pa. Oct. 20, 2014), *aff'd*, 643 F. App'x 201 (3d Cir. 2016). Furthermore, by the time that State Farm took this statement from Ridolfi, it was confronted by two significant demands from the plaintiff, demands which warranted a careful evaluation of her injuries, losses and claims. Moreover, the medical information State Farm possessed was limited in some respects since it did not include medical information pre-dating the accident; nor did it encompass medical records after March of 2012. Thus, at the time of this statement in June 2014, there was a two year gap in the medical information available to State Farm, information which was important to a fully informed assessment of this policy limits demand and an overall evaluation of the case.

Further, it seems undisputed that the statement under oath obtained from Ridolfi in June of 2014 produced relevant information which assisted in claims evaluation since Ridolfi disclosed during that statement that she had been involved in a prior accident, and reported that she had undergone medical treatment after March 2012, the last date upon which medical records had been produced. In short, this action by State Farm in obtaining a statement under oath from Ridolfi was

commonplace, was provided for under the insurance policy, was prudent given the nature of the plaintiff's demands, and was productive in that it produced evidence relevant to an assessment of those demands. Therefore, this action cannot be seen as bad faith claims processing.

In reaching this conclusion we recognize that Ridolfi argues that State Farm's insistence upon taking this statement under oath constituted bad faith conduct because Ridolfi had been previously deposed in the underlying tort case involving the original tortfeasor in February of 2012. According to Ridolfi, State Farm had been invited to attend this deposition but had elected not to do so. Given this prior deposition, Ridolfi invites us to find bad faith based upon State Farm's insistence some two years later on obtaining its own sworn statement from the plaintiff.

We will decline this invitation. While State Farm denies that it was invited to this deposition, even if we construe the evidence in a light most favorable to Ridolfi and find that State Farm was invited to attend the deposition, we conclude that the failure to attend this deposition does not evidence bad faith. First, given State Farm's status as a non-party, it is doubtful that this company could have participated in the deposition in any meaningful fashion. Second, the deposition took place some 16 months prior to the first notice by Ridolfi that she intended to bring a UIM claim against State Farm. Until State Farm was notified of this potential UIM claim

in August of 2013, we do not believe that it had an obligation to attend this deposition, and we cannot find bad faith based simply upon this insurer's lack of prescience and inability to predict what would transpire some 16 months later. Third, even if State Farm had attended this deposition in February of 2012, by June of 2014 it would still have been justified in requiring a statement under oath from Ridolfi, who was demanding a policy limits payment, in order to document the scope and extent of her injuries and treatment since 2012. Since it is not bad faith for an insurance company to "conduct a thorough investigation into a questionable claim," *Babayan,* 430 F.3d at 138, we cannot find that this through, and productive, inquiry into Ridolfi's policy limits IUM claim rises to the level of bad faith.

Likewise, the manner in which the parties obtained and exchanged medical records, which is cited by Ridolfi as evidence of bad faith, in our view falls short of the mark even when considered in a light most favorable to Ridolfi. As we have noted this process was marked by missteps, delays and confusion by all parties, however, some of those difficulties and delays are attributable, at least in part, to the plaintiff. For example, between November 2013 and January 2014, there was an initial delay between Ridolfi's counsel and State Farm in ensuring that State Farm had received those records that were in plaintiff's possession. This initial confusion contributed to several months delay in evaluating this claim, but the

evidence does not allow a finding of bad faith on State Farm's part. Quite the contrary, after State Farm was unable to locate the records which plaintiff's counsel believed he had forwarded to this insurer in November of 2013, State Farm took the initiative to pursue this matter with counsel in January of 2014, writing and calling counsel to obtain these records. This show of initiative by State Farm in seeking out medical information is inconsistent with a claim of "conduct [by State Farm which] imports a dishonest purpose and . . . a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Furthermore, once receipt of these records revealed gaps in medical information, both preceding the 2008 accident, and after that accident from March 2012 forward, State Farm was justified in undertaking efforts to secure this additional medical information.

Furthermore, any fully informed assessment of this claim entailed not only development of Ridolfi's medical history, a process which the parties pursued throughout 2013 and 2014, but also an understanding of the outcome of Ridolfi's claim against the original tortfeasor who had struck and injured her. This component of the claims evaluation process was only resolved in September of 2014, when Ridolfi settled that underlying case for $85,000, a sum which fell below the tortfeasor's policy limits. While many considerations go into a claim

settlement, and Ridolfi may not be penalized for accepting less than the policy limits in this original action, the fact that the underlying claim settled for less than the policy limits after protracted litigation is certainly a factor which is relevant to State Farm's evaluation of this claim and any determination of whether the plaintiff has shown that "a jury could find by 'the stringent level of clear and convincing evidence' that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness, *Verdetto v. State Farm Fire and Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011)), *aff'd* 510 F. App'x 209 (3d Cir. 2013), the legal benchmark for assessing a bad faith claim on summary judgment. State Farm could justifiably await some resolution of the underlying tort claim as part of its evaluation of this UIM claim, since the UIM claim is inextricably linked to the underlying negligence claim and the adequacy of insurance coverage on that claim. Indeed, in this precise factual setting we have held that "it was reasonable for [the insurer] to await a determination regarding whether [the insured's] injuries exceeded the . . . primary insurance coverage thresholds under the [primary] policy, before resolving its UIM claim." *See Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2016 WL 6962620, at *6 (M.D. Pa. Nov. 29, 2016).

Finally, Ridolfi has argued that State Farm's violated the Pennsylvania Unfair Claims Settlement Practices Act 40 P.S. §1171.1 *et seq*. and the associated Unfair

Insurance Practices Regulations (31 Pa. Code §146.1 *et seq*.), which require

insurance companies to provide 45 day updates on the status of insurance claims, by

failing to provide such written claims updates in accordance with the timetable set

by regulations.   Ridolfi asserts that this alleged failure to comply with insurance

regulations is evidence of bad faith conduct which would defeat State Farm's partial

summary judgment motion.   On this score, the controlling legal standards can be

simply stated:   A violation of these insurance rules can be considered when

examining a bad faith claim under §8371.   *See, Romano v. Nationwide Mut Fire*

*Ins. Co.*, 435 Pa, Super. 545, 646 A.2d 1228 (1994), (holding that a trial court can

consider the Unfair Insurance Practices Act, 40 P.S. §§ 1171.1-.15 (UIPA), when

determining whether an insurer acted in bad faith under 42 Pa.C.S.A. § 8371.)

However, it is also clear beyond peradventure "that a violation of the UIPA or the

UCSP is not a *per se* violation of the bad faith standard."   *Oehlmann v. Metro. Life*

*Ins. Co*., 644 F. Supp. 2d 521, 530 (M.D. Pa. 2007).   In short, "the United States

Court of Appeals for the Third Circuit and this court have held that alleged

violations of the Unfair Insurance Practices Act do not, in and of themselves,

constitute bad faith pursuant to 42 Pa. Cons.Stat. § 8371.   *Leach v. Northwestern*

*Mut.* Ins. Co., 262 F. App'x 455, 459 (3d Cir.2008) (concluding that 'insofar as

[plaintiff's] claim for bad faith was based upon an alleged violation of the UIPA, it

failed as a matter of law'); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505–06 (3d Cir.2004) (finding that the plaintiff 'cannot rest its bad faith claim on the violations of the UIPA'); *Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co.*, 29 F. App'x 823, 827 (3d Cir.2002) (concluding that 'a violation of the UIPA or the UCSP is not a per se violation of the bad faith standard'); *Oehlmann v. Metro. Life Ins. Co.,* 644 F.Supp.2d 521, 531 (M.D.Pa.2007) ('reject[ing] that the alleged violations of UIPA and UCSP are bad faith per se' )." *Stricker v. State Farm Mut. Auto. Ins. Co.*, No. 1:12-CV-565, 2012 WL 2153977, at *2, n.2 (M.D. Pa. June 13, 2012).

This case aptly illustrates why technical violations of these state insurance regulations cannot be equated with bad faith. The record before us amply reveals active, extensive and on-going communications between State Farm and Ridolfi's counsel once Ridolfi notified State Farm in August of 2013 that it was "put[ting] [State Farm] on notice that this case may involve a UM/UIM potential claim." Our review of the substance of these multiple communications, which spanned the following year, reveals that even when the communications are viewed in a light most favorable to Ridolfi, these communications do not support a claim of bad faith shown by clear and convincing evidence. Given that the communications, in their substance, do not allow for a finding of bad faith here, it would be anomalous to conclude that the fact that the communications did not meet the technical frequency

requirements mandated by insurance regulations, standing alone, established a bad faith claim in this case. Therefore, like many other courts have done in the past, we will decline to exalt insurance procedure over substance and find that substantively reasonable conduct constitutes bad faith simply because it failed to comply with insurance regulatory procedures.

## IV. <u>Conclusion</u>

In sum, even when we construe the evidence in a light most favorable to the plaintiff, we find that this evidence will not permit a conclusion in accordance with the stringent standards prescribed by state law that State Farm acted in bad faith when assessing this claim. Therefore, State Farm's motion for partial summary judgment will be granted. This does not mean that Ridolfi is without recourse against her insurer, State Farm. Instead, it simply means that this case will proceed forward on Ridolfi's breach of contract claim against State Farm.

A separate order consistent with this memorandum opinion follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: April 10, 2017